**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAWASAKI MOTORS FINANCE CORPORATION, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 5844 |
| v. | ) ) | Judge Joan H. Lefkow |
| BIRUTE A. VANAGAS, an Illinois citizen, and LIUDAS L. VANAGAS, an Illinois citizen, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Kawasaki Motors Finance Company ("KMFC"), brought this breach of guaranty suit against defendants Birute A. Vanagas and Liudas L. Vanagas (collectively, "the Guarantors").[1] The Guarantors each executed identical Continuing Guarantees (collectively, "the Continuing Guaranty") on behalf of a third party, Pinemeadow Corp., d/b/a/ Park Shore Marina ("Pinemeadow"). Under the provisions of the Continuing Guaranty, the Guarantors agreed to guarantee any debts of Pinemeadow to KMFC. Pinemeadow entered into a consent judgment with KMFC for $76,582.05. In this case, KMFC seeks to recover that debt from the Guarantors. KMFC has moved for summary judgment. [#15]. For the following reasons, summary judgment will be granted in KMFC's favor.[1]

---

[1] The jurisdiction of this court over the subject matter of this action is proper under 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. KMFC is a corporation that is incorporated under the laws of the State of Delaware with its principal place of business in the State of California and the Guarantors are citizens and residents of Illinois.

**I.      Background[2]**

On May 3, 2001, KMFC and Pinemeadow entered into a Financing and Security Agreement ("the Agreement"). Plaintiff's L.R. 56.1 Statement of Uncontested Facts (hereinafter "PS"), at ¶ 1. Under the terms of the Agreement, KMFC agreed to provide credit towards Pinemeadow's purchase of recreational utility vehicles ("the Collateral") from Kawasaki Motors Corp., U.S.A. for Pinemeadow to sell at its dealership. PS, at ¶ 2. In return, Pinemeadow agreed to pay KMFC all amounts owing with respect to each item of the Collateral that was sold. PS, at ¶ 3. Additionally, Pinemeadow agreed to hold a certain percentage of the proceeds from the sale of each piece of Collateral in trust for KMFC's benefit. *Id*.

On December 10, 2005, the Guarantors each executed a "Continuing Guaranty" on behalf of Pinemeadow as additional security to KMFC for extending credit to Pinemeadow. Plaintiff's Compl. for Breach of Guaranty (hereinafter "Compl."), at ¶ 9, Ex. D; PS, at ¶¶ 4-7. KMFC continued to extend credit to Pinemeadow in reliance upon the Continuing Guaranty. PS, at ¶¶ 8-10. By signing the Continuing Guaranty, the Guarantors guaranteed the prompt and unconditional performance and payment of all current and future obligations and liabilities of Pinemeadow to KMFC. PS, at ¶ 11. Specifically, Section 1 of the Continuing Guaranty states:

> For valuable consideration, the undersigned ("Guarantor") irrevocably guarantees and promises to pay Kawasaki Motors Finance Corporation ("KMFC"), or order, on demand, when due whether by acceleration or otherwise, in lawful money of the United States in cash or immediately available funds acceptable to KMFC, any and all indebtedness (the "Indebtedness") of PINEMEADOW CORP ("Dealer") to KMFC. The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances (including interest thereon), debts, obligations, and liabilities of Dealer heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary, and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated,

---
[2] The Guarantors have not contested 27 of the plaintiff's 28 Local Rule 56.1 statements of fact. With regard to the last one, ¶ 25, the Guarantors neither admitted nor denied it, without citing any record evidence.

determined or undetermined, and whether Dealer may be liable individually or jointly with others or whether recovery upon such Indebtedness may be now, or later become, barred by any statute of limitations, or whether such Indebtedness may be or later become otherwise unenforceable, and any and all amendments, modifications, renewals or extensions of any Indebtedness, including, but not limited to, those which are evidenced by new or additional instruments or agreements.

Compl., Ex. C.

Under the Guaranty, the Guarantors waived all rights and defenses available to them under California Civil Code sections 2787-2855 and any other or similar statutory provisions.[3] PS, at ¶¶ 16-17. The Continuing Guaranty also states that the "Guarantor[s] agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by KMFC in the collection or enforcement of the Guarantor's obligations pursuant to this Guaranty or the Indebtedness, whether or not suit is filed." PS, at ¶ 18. The Continuing Guaranty provides that "[a]ll such amounts due[] KMFC shall be paid immediately, upon demand by KMFC, and if not paid when so demanded, shall bear interest at the highest rate allowed by law." PS, at ¶ 19.

On June 21, 2007, KMFC performed an inventory of the Collateral and discovered that Pinemeadow had breached the Agreement by selling certain items of the Collateral out of trust. PS, at ¶¶ 20, 24. KMFC filed a lawsuit against Pinemeadow in the Circuit Court for the County of Cass, Michigan. PS, at ¶ 23. That court entered a Consent Judgment in favor of KMFC and

---

[3] Pursuant to a choice of law provision in the Continuing Guaranty, California law governs. Neither party challenges the validity of the agreement nor argues that the law chosen in the Continuing Guaranty is contrary to Illinois's fundamental public policy. *Huthwaite, Inc.* v. *Randstad Gen. Partner (US)*, 2006 WL 3065470, at * 5 (N.D. Ill. Oct. 24, 2006) (noting that because neither party contests that application of the choice-of-law would violate Illinois public policy, "the court will give effect to the parties' agreement . . . "); *see also U.S. Neurosurgical* v. *City of Chicago*, 2006

WL 752970, at * 6 (N.D. Ill. Mar. 21, 2006) (noting that "Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy.") (citing *Fulcrum Fin. Partners* v. *Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000)).

against Pinemeadow, which was signed by both parties, in the amount of $76,582.05. PS, at ¶ 25; Ex. A to Scott R. Murphy's Affidavit ("Murphy's Aff."), at ¶ 2.

Pursuant to the Continuing Guaranty, the Guarantors became immediately liable to KMFC for "any and all indebtedness" resulting from Pinemeadow's default. Compl., at ¶ 25, Defendant's Answer for Breach of Guaranty, at ¶ 25. On September 18, 2007, KMFC served Notices of Default upon the Guarantors and demanded that they pay the entire indebtedness of Pinemeadow in accordance with the Continuing Guaranty. PS, at ¶ 27. The Notice of Default letters stated that the Indebtedness totaled $77,641.65 and was due to KMFC by September 30, 2007 at 5:00 PM Eastern time. Compl., Ex. H; Murphy's Aff., Ex. B & C. The Indebtedness was broken down as follows: (i) $58,443.00 in unpaid principal; (ii) $4,948.95 in accrued and unpaid interest as of August 31, 2007; (iii) $3,250.00 in repossession fees; and (iv) $10,999.70 in attorneys' costs and fees. Murphy's Aff., Ex. B & C. The per diem charge is $35.32. *Id*. KMFC has not collected any money from Pinemeadow owed to KMFC under the Consent Judgment and Pinemeadow remains indebted to KMFC for the entire amount of the Consent Judgment. PS, at ¶ 26. The Guarantors have failed to remit payment to KMFC for the indebtedness owed by Pinemeadow. PS, at ¶ 28.

KMFC has now filed a motion for summary judgment in the amount of $76,582.05 (the amount of the Consent Judgment) plus interest and any and all costs and attorneys fees incurred by KMFC in bringing this lawsuit. Plaintiff's Mot. for Summ. J., at ¶ 5. The Guarantors request that the court deny the motion for summary judgment or, in the alternative, grant summary judgment only on the issue of liability, because they contest the amount of the Consent Judgment. Defendant's Resp. to Mot. for Summ. J., at ¶¶ 2, 5. They state that they are unable to determine whether the amount entered was correct or reasonable, as KMFC did not specify the

4

basis for the calculation of the principal balance, accrued interest, repossession fees, and attorneys' costs and fees. *Id*. at ¶¶ 2, 5.

## II.     Summary Judgment Standard

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Ruffin-Thompkins* v. *Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). In response, the non-moving party cannot rest on bare pleadings alone but must use evidentiary tools to designate specific material showing that there is a genuine issue for trial. *Celotex*, 447 U.S. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A genuine issue of material fact must be outcome determinative under the governing law in order to warrant denial of summary judgment. *Insolia*, 216 F.3d at 598-99.

The court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 447 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *Abullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Mere speculation by the non-moving party, however, is insufficient to create a genuine issue of material fact. *Germano* v. *Int'l Profit Ass'n, Inc.*, No. 06 CV 5638, 2007 WL 3243857, at * 1 (N.D. Ill., Nov. 1, 2007) (citing *McCoy* v. *Harrison*, 341 F.3d 600, 604) (7th Cir. 2003)).

## III.    Discussion

California Civil Code section 2807 states that "[a] [guarantor] who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the

principal, and without demand or notice." Cal. Civ. Code § 2807. Under this code, a guaranty is a promise to answer for the debt of another. *Trust One Mortgage. Corp.* v. *Invest Am. Mortgage Corp.*, 37 Cal. Rptr. 3d 83, 89, 134 Cal. App. 4th 1302, 1309 (Cal. Ct. App. 4th Dist. 2005) (noting that "A guarantor makes a direct promise to perform the principal's obligation in the event the principal fails to perform.").

The Guarantors' sole argument in opposition to the motion for summary judgment is that KMFC has submitted insufficient documentation supporting the calculation of the amount of the Consent Judgment, including the principal, costs, attorneys' fees, and interest.

In support of its motion, KMFC first argues that the Guarantors signed the Continuing Guaranty, which plainly stated that the Guarantors are liable for "any and all indebtedness (the 'Indebtedness') of PINEMEADOW CORP ('Dealer') to KMFC." PS, at ¶ 12. Section 1 of the Continuing Guaranty defines "Indebtedness" in its most comprehensive sense to include any debt "now or hereafter made, incurred or created . . . however arising" including any debt "evidenced by new or additional agreements." PS, at ¶¶ 12-13. Furthermore, section 7 of the Continuing Guaranty states that Guarantors waive any possible defense to enforcement of the Guaranty, including "any and all rights and defenses available to Guarantor[s] by reason of California Civil Code sections 2787-2855, inclusive, and any other similar statutory provisions." PS, at ¶ 17.

The court agrees that the Consent Judgment entered against Pinemeadow falls within the express language of the Continuing Guaranty. Pinemeadow consented to the Judgment, and it became binding because neither Pinemeadow nor the Guarantors submitted written objections to the Judgment within seven days. Mich. Ct. R. 2.602(B)(3)(a) ("If no written objections are filed within seven days, the clerk shall submit the judgment or order to the court, and the court shall

then sign it if, in the court's determination, it comports with the court's decision."). The Michigan court reserved the right to "resolve[] the last pending claim and close[] the case" upon the parties' signatures. Murphy's Aff., Ex. A. If the Guarantors want to challenge the amount of the judgment entered between KMFC and Pinemeadow, they must do so in that court.

Second, KMFC argues that the Guarantors failed to provide evidence suggesting why the amount of the Consent Judgment is erroneous. Under similar facts, Judge Ann Williams (the a district judge) granted summary judgment in favor of a creditor and against a guarantor, stating, "Summary Judgment is an appropriate means for plaintiffs to obtain a judgment against a guarantor, when a defendant admits executing a guaranty and does not plead an affirmative defense for breach of contract, like duress." *Equitable Life Assurance Soc'y* v. *Shen*, No. 98 C 0366, 1999 WL 231666, at *3 (N.D. Ill. Mar. 26, 1999) (citing *BA Mortg. & Intern. Realty Corp.* v. *LaSalle Nat. Bank*, 535 F. Supp. 435, 438-39 (N.D. Ill. 1982)). In *Shen*, the defendant, Steven Shen, executed a personal guaranty holding him liable for all rent payable by Ulti-Med pursuant to a lease agreement with Equitable Life Assurance Society. *Id*. at *1. When Ulti-Med failed to pay rent, an Illinois state court entered judgment against Ulti-Med in the amount of $164,138.40. *Id*. Equitable then filed suit against Shen as the guarantor and moved for summary judgment seeking the defaulted rent amount, attorneys' fees, costs and interest. *Id*. Although Shen did not dispute that Ulti-Med breached its lease agreement or that he became responsible for Equitable on Ulti-Med's default, Shen argued that summary judgment should be denied because the amount entered in the judgment was erroneous. *Id*. at *3. The court rejected this argument and granted summary judgment in favor of Equitable because Shen failed to present evidence stating why the amount entered was inappropriate. *Id*. at *4. The court reasoned as follows:

7

> Shen cannot create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial or what might be turned up by further discovery. Furthermore, as guarantor, Shen has the duty to find out exactly how much he owes Equitable. He neither suggests that he will attempt to obtain this information, nor explains why he is unable to do so at this time. In the context of the guarantor-guarantee relationship, there is no duty of care or loyalty requiring disclosure by the guarantee to the guarantor; [the court] assumes they do their own investigation.
>
> The court will not forego resolution of this matter without at least some evidence to disprove Equitable's claims. Shen has provided no facts to create a genuine issue as to whether he owes plaintiff the full amount claimed. An Illinois court has already determined that . . . Ulti-Med owes plaintiff $164,138.40. The court will not question the validity and accuracy of this state court final judgment.

*Id.* (quotations and citations omitted).

Judge Williams's analysis in *Shen* applies equally to this case. Similar to *Shen*, the Guarantors do not deny their liability to KMFC but merely contest the amount entered in the Consent Judgment. Also similar to *Shen*, the Guarantors have brought forth no evidence to show how the amount of the Consent Judgment entered against Pinemeadow is erroneous. Merely asserting that KMFC failed to provide grounds for calculations of the principal balance, interest, costs, and attorneys' fees does not create a material fact issue determinative under any governing law. The amount of principal due would presumably be a fact that is within the Guarantors' control; however, they fail to suggest any reason why the amount due is inappropriate. Moreover, as stated above, the amount was finally determined by the Michigan court. Because the Guarantors have not put forth any evidence (or even argument) suggesting that Pinemeadow is not indebted to KMFC in the amount claimed, summary judgment will be granted in KMFC's favor.

**IV.     Conclusion and Order**

For the reasons set forth above, KMFC's motion for summary judgment [#15] is granted. The court will enter judgment in favor of KMFC in the amount of $76,582.05 plus interest, costs and attorneys' fees incurred by KMFC in prosecuting this action.  KMFC should submit their request for attorneys' fees and costs to the court pursuant to Fed. R. Civ. P. 54(d) and Local Rule 54.3.

Dated: August 4, 2008                    ENTER: _____
                                                                    Joan Humphrey Lefkow
                                                                    United States District Judge